[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action the plaintiff, Edward J. McLaughlin, seeks to recover commissions, bonuses, reimbursement for expenses and unused vacation from the defendants Trammel Crow Corporate Services, Inc. (TCCS), the marketing division of defendant Trammel Crow Company, Inc. (TCC).[1] The plaintiff has now applied (#162) pursuant to General Statutes § 52-278 et seq. for a prejudgment remedy of an attachment against the defendants in the amount of $1,400,000.
Plaintiff alleges that he was hired in 1987 by Trammel Crow National Marketing (TCNM), a limited partnership and the predecessor to defendant TCCS, as a national marketing representative. TCNM was described as the marketing division of Trammel Crow Company, the predecessor to defendant TCC. Plaintiff contends that he is entitled both to a commission as a percentage of revenues and also to an 11.25% share of the profits with respect to two contracts, one known as the "Network 2000" contract, and the other as the "Outsourcing Contract," respectively. Both of these contracts were between Trammel Crow Company and Baxter Healthcare Corporation, Inc. (Baxter), of Deerfield, Illinois.
The plaintiff also alleges that when hired by TCNM, he was promised, in addition to a base salary, commissions of 30%, later reduced by agreement to 16%, of the fees from business that he generated for his employer. The Network 2000 contract that he negotiated with Baxter in March, 1989, gave TCC the exclusive right to develop a national distribution center network for Baxter in the United States for a period of seven years.[2] The Outsourcing Contract signed in April, 1990, provided that TCC would manage all of Baxter's real estate, property management and facilities planning operations in the country through 1993.
Plaintiff contends that the two contracts together generated profits of $7,400,000 for the defendants in 1990, and that they were projected to generate profits of $3,000,000 in 1991, $2,200,000 in 1992, and $1,500,000 in 1993. The plaintiff completed his work on the two contracts in or about May, 1990, received various payments with respect to the contracts while he worked for defendants, and then voluntarily terminated his employment with TCCS in August, 1991. Plaintiff claims in this present action that he is entitled to commissions for the Network 2000 Contract and the Outsourcing Contract based on revenue and profits received by defendants after he left their employ. According to plaintiff, he is owed approximately $112,000 on the CT Page 8208 Network 2000 Contract, and $515,000 on the Outsourcing Contract, as well as bonuses and other reimbursements for a total of about $700,000 on the two contracts combined. Plaintiff further contends that this figure should be doubled on the theory that what is owed him constitutes unpaid wages pursuant to General Statutes §§ 31-72, thus totalling $1,400,000, including attorney's fees. The amount of damages claimed by plaintiff is based on an "Aggregate Pursuit Cost Analysis," prepared at least in part by the plaintiff while he was at TCCS, and covers anticipated profits for the years 1991, 1992 and 1993. Plaintiff claims he is entitled to this amount on either of two theories. The first is that the defendants and/or their predecessors expressly promised to reimburse him as set forth above. The alternate claim is that he is entitled to the amount sought on the theory of unjust enrichment.
The defendants contend that the plaintiff was paid approximately $470,000 on these two contracts for revenues and profits received by defendants while plaintiff remained as an employee, and that he is not entitled to any revenue or profits received after he left their employ. Defendants argue, first, that no such agreement providing for post-employment payments was ever entered into. Second, defendants argue that even if there was such an agreement, enforcement thereof would be barred by the Statute of Frauds, General Statutes § 52-550, because the agreement could not possibly have been completed within one year since it involved two contracts with long-term payouts, 1996 and 1993, respectively.[3] Defendants also claim that the doctrine of unjust enrichment is inapplicable because the plaintiff alleges that he had an express contract with defendants, as contrasted with a claim for a quasi-contractual theory of recovery. See A C Corporation v. Pernaselei, 2 Conn. App. 264,265, 477 A.2d 166 (1984) ("Unjust enrichment is a legal doctrine to be applied when no remedy is available pursuant to a contract. 5 Williston, Contracts (Rev. Ed.) § 1479"). With regard to the claim for a bonus, defendants claim that the plaintiff failed to offer any proof that he was entitled to a bonus for the remainder of 1991 after he terminated his employment.
General Statutes § 52-278d(a) provides, in pertinent part, that: "[i]f the court, upon consideration of the facts before it and taking into account any defenses, counterclaims or setoffs . . . finds that the plaintiff has shown probable cause that such a judgment will be rendered . . . in the plaintiff's favor," a plaintiff is entitled to a prejudgment remedy.[4]
CT Page 8209 "Prejudgment remedy proceedings do not address the merits of the action; they concern only whether and to what extent the plaintiff is entitled to have property of the defendant held in the custody of the law pending adjudication of the merits of that action." (Internal quotation marks omitted; citations omitted.)Tyler v. Schnabel, 34 Conn. App. 216, 219, 641 A.2d 388 (1994). "Probable cause for purposes of the PJR statute is a flexible common sense standard that does not demand that a belief be correct or more likely true than false." Fischel v. TKPK, Ltd.,34 Conn. App. 22, 24, 640 A.2d 125 (1994). "In acting on a prejudgment remedy motion, the trial court must evaluate the arguments and evidence produced by both parties to determine whether there is probable cause to sustain the validity of the plaintiff's claim . . . . [T]he trial court, vested with broad discretion, need determine only the likely success of the plaintiff's claim by weighing probabilities . . . Civil probable cause constitutes a bona fide belief-in the existence of the facts essential under the law for the action and such as would warrant a person of ordinary caution, prudence and judgment, under the circumstances, in advancing the action." (Citations omitted.) Tyler v. Schnabel, supra, 219-20.
After considering the testimony and exhibits, this court has concluded that the plaintiff has not shown probable cause that a judgment will be rendered in his favor. Accordingly, he is not entitled to a prejudgment remedy. The main reason for this conclusion is that the plaintiff has failed to present evidence affording this court a reasonable opportunity to make a fair estimate of his damages, if any. Damages, of course, do not have to be proven with certainty and exactitude, but they do have to be proven with reasonable probability. Solomon v. Aberman,196 Conn. 359, 379, 493 A.2d 193 (1985). Plaintiff's claim is based on "projections" for the years 1991, 1992, and 1993, rather than actual performance data consisting of revenues and profits for those years, which are available. Plaintiff relies heavily onTurgeon v. Turgeon, 190 Conn. 269, 460 A.2d 1260 (1983), but this case is distinguishable because in Turgeon the court questioned the accuracy of the exhibits submitted by the defendant showing actual earnings since the defendant had relied on financial projections to secure loans, and the courts examination of the projections demonstrated that they were conservative in comparison to the actual results. Id., 273. The plaintiff in this case has failed to offer evidence as to why the "Aggregate Pursuit Cost Analysis" projections are more accurate than the actual revenues and profits over the years in question. CT Page 8210
Moreover, the testimony of plaintiff's expert witness on the matter of damages was not particularly persuasive. The expert relied exclusively on the projections and then applied plaintiff's claimed percentage se share thereto. The expert agreed that actual performance data would be more accurate, but that he had not been furnished with such information.
It may well be that in a full scale trial, when the issues can be more fully developed, the plaintiff will persuade the trier of fact that he is entitled to a judgment in his favor.[5] However, in this proceeding, because of the question as to proof of damages, the plaintiff has not sustained his burden of showing probable cause that a judgment will be rendered in his favor, as is required by General Statutes §52-278d(a).[6] Accordingly, his application for a prejudgment remedy is denied.
So Ordered.
Dated at Stamford, Connecticut, this 11th day of August, 1994.
William B. Lewis, Judge